UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL CONTINENTAL
INSURANCE COMPANY,

      Plaintiff,

v.

NURBEK AIAZBEKOV, ZEF LJAJCAJ,
and ROAD CARRIERS, INC.,

      Defendants.

Case No. 1:18-CV-727

HON. GORDON J. QUIST

-AND-

ZEF LJAJCAJ,

      Counter-Plaintiff,

v.

NATIONAL CONTINENTAL
INSURANCE COMPANY,

      Counter-Defendant.

_____/

## OPINION GRANTING PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff/Counter-Defendant, National Continental Insurance Company, filed a Complaint for Declaratory Judgment on June 29, 2018. (ECF No. 1.) In response, Defendant/Counter-Plaintiff, Zef Ljajcaj, filed an answer to the complaint and a counter-claim against National. (ECF No. 7.) The parties filed cross-motions for summary judgment. (ECF Nos. 19, 21.) Having

considered the parties' arguments, the Court will grant National Continental's Motion for Summary Judgment (ECF No. 19) and deny Ljajcaj's Motion for Summary Judgment (ECF No. 21).

**I. BACKGROUND**

In the early morning hours of October 19, 2016, Nurbek Aiazbekov was driving a semi-truck and trailer combination, carrying a load of watermelons on behalf of his employer, Road Carriers, Inc., when the truck got into an accident with a vehicle driven by Ljajcaj. Ljajcaj alleges that he was seriously and permanently injured in the accident.

Ljajcaj sued Aiazbekov and Road Carriers in Berrien County Circuit Court for commercial trucking negligence. Ljajcaj alleged that Road Carriers was vicariously liable for Ljajcaj's injuries. As the liability insurer for Road Carriers, National Continental hired separate counsel to defend Road Carriers and Aiazbekov. Before a settlement agreement was reached between Road Carriers and Ljajcaj, counsel for Aiazbekov moved for and was granted withdrawal as counsel because Aiazbekov had discontinued communication with counsel despite several attempts to contact Aiazbekov, including the use of a private investigation firm. Ljajcaj and Road Carriers eventually negotiated a settlement of all claims against Road Carriers for a payment of $500,000.

After the state court granted withdrawal of Aiazbekov's counsel and after Road Carriers reached the settlement agreement with Ljajcaj, the Michigan Circuit Court granted Ljajcaj's unopposed motion for partial summary disposition, finding Aiazbekov negligent as a matter of law. On July 16, 2018, Ljajcaj moved for default and final judgment against Aiazbekov, requesting a default judgment in the amount of $4,500,000. The motion received no response. After hearing Ljajcaj on his motion, the state court entered a final default judgment against Aiazbekov for $2,642,408.06.

National Continental filed the instant action, seeking a declaration that National Continental has no duty to defend or indemnify Aiazbekov in connection with Ljajcaj's claims. Ljajcaj, on the other hand, requests the Court to enter a judgment against National Continental for the amount of the judgment owed to Ljajcaj by Aiazbekov, as well as interest, attorneys' fees, and costs.

## II. ANALYSIS

There is no question that Aiazbekov was considered an "insured" under Road Carriers' policy with National Continental. (Policy, ECF No. 1-2 at PageID.64 (including in coverage "[a]nyone else while using with [Road Carriers'] permission a covered 'auto'")). As such, under the policy, National Continental had an obligation to defend and/or settle suits for damages against Aiazbekov. (*Id*. at PageID.87.) However, National Continental's policy included a cooperation clause, which stated that Road Carriers "and any other involved 'insured'" had a duty to cooperate with National Continental "in the investigation or settlement of the claim or defense against the 'suit'." (*Id*. at PageID.70.) Thus, the parties' claims hinge on the applicability of the cooperation clause and availability of a non-cooperation defense.

To begin, the Court must decide what substantive law to apply to the parties' claims—Illinois or Michigan law. "A federal court exercising diversity jurisdiction applies the choice of law rules of the state in which it sits." *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692–93 (6th Cir. 2013). In employing Michigan's choice-of-law framework, the Court first has to determine whether the instant case is a contract action, a tort action, or a hybrid of the two. *Farm Bureau Ins. Co. v. Abalos*, 277 Mich. App. 41, 44, 742 N.W.2d 624, 626 (2007). In this case, the parties do not seek a declaration regarding tort liability (as the state court case already determined that Aiazbekov was negligent), but rather a declaration concerning National Continental's

3

"contractual obligation to pay insurance benefits." *Id*. Therefore, this case is properly characterized as a contract action. *Id*.

Michigan courts have rejected the "rigid 'law of the place of contracting' approach" to resolving choice-of-law questions in contract disputes. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 124, 528 N.W.2d 698, 703 (1995). Instead, Michigan courts employ the approach outlined in Restatement (Second) of Conflicts §§ 187 and 188. *Id*.

Section 188 of the Restatement (Second) of Conflicts states that, absent an effective choice of law by the parties, courts should consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." In this case, Illinois was the place of contracting and negotiation. The policy is an Illinois policy with Illinois-specific endorsements. The place of performance would principally cover Illinois, but would include other states to which Road Carriers' vehicles traveled, such as Michigan. The location of the subject matter of the contract is primarily Illinois, which is the state that houses Road Carriers' business and fleet. Road Carriers is an Illinois company, Aiazbekov appeared to reside in Pennsylvania at the time of the accident, and Ljajcaj is from Michigan.

The factors point to Illinois as the state having the greatest interest in the contract (policy). While the accident and the subsequent litigation took place in Michigan, that is not enough for Michigan to claim an interest in an action seeking payment of insurance benefits under an Illinois contract. *See Abalos*, 277 Mich. App. at 44-45, 742 N.W.2d at 626-27 (finding that Michigan law applied to a claim for insurance benefits under a Michigan contract even though the accident occurred in Ohio and injured Ohio residents). Thus, Illinois law applies.

4

Under Illinois law, to establish a breach of a cooperation clause, "the insurer must show that it exercised a reasonable degree of diligence in seeking the insured's participation and that the insured's absence was due to a refusal to cooperate." *Founders Ins. Co. v. Shaikh*, 405 Ill. App. 3d 367, 374, 937 N.E.2d 1186, 1193 (2010). The court in *Founders* compared cases to determine what constituted a reasonable degree of diligence. The court noted that cases in which the insurer's only attempt to contact the absent client was through letters that did not elicit a response was not enough to show that the client was refusing to cooperate. In contrast, sending letters, calling the client's employer and family members, and hiring a private investigator who could only determine the client was likely in San Francisco or Los Angeles did constitute reasonable diligence in seeking participation. However, simply hiring a private investigator was not enough if the investigator failed to pursue several leads and failed to contact sources that were likely to have information about the absent client. *Id.* at 375-78, 937 N.E.2d at 1193-95. After reviewing cases, the court in *Founders* determined that Founders had diligently pursued the cooperation of the absent client by contacting sources that were likely to disclose the client's whereabouts; generating leads and exhausting every lead it generated; attempting to contact the client through multiple means; searching databases for additional contact information; visiting the client's last-reported addresses; and hiring a private investigator who was able to contact the client's son, but the son had not talked to his father in years. *Id.* at 378, 937 N.E.2d at 1195-96.

In the instant case, National Continental has likewise established a breach of the cooperation clause. In state court, counsel for Aiazbekov filed a motion to withdraw as counsel. (Exhibit C to Pl.'s Complaint, ECF No. 1-3.) In the motion, counsel outlined the steps that had been taken to locate and secure cooperation from Aiazbekov, information which was supported by six exhibits:

- At the beginning of representation in September 2017, Aiazbekov requested that one of his acquaintances, Mario Islas, join conversations between Aiazbekov and counsel because Aiazbekov had a thick accent and difficulty understanding the substance of the conversation in English.
- Counsel communicated with Aiazbekov directly and in conversations facilitated by Islas.
- Counsel reached out to Islas in mid-January 2018 when counsel was unable to contact Aiazbekov.
- Islas indicated that he could not get ahold of Aiazbekov, so counsel asked Islas to contact members of Aiazbekov's community. Islas was still unable to contact Aiazbekov through community contacts.
- While Islas was trying to contact Aiazbekov, counsel made near-daily attempts to contact Aiazbekov via a combination of U.S. mail, certified mail, telephone calls, and text messages.
- Counsel hired a Pennsylvania private investigation firm to search databases to acquire any additional contact information related to Aiazbekov. In the meantime, counsel continued sending correspondence to the last known address for Aiazbekov.
- Counsel hired the same private investigation firm to make contact with Aiazbekov. The investigator visited two residences associated with Aiazbekov.
    - At one residence in a small condominium complex, the resident told the investigator that he had moved into the residence six months earlier and received mail intended for Aiazbekov but did not know Aiazbekov. There was no management office on-site, but the investigator called the management company. The person at the management company did not recognize Aiazbekov's name and told the

- investigator that each unit at the complex was individually owned so the owners were not obligated to report to the management company.
  - At the other residence, an apartment, the investigator spoke with someone who identified himself as a "former friend" of Aiazbekov. The former friend stated that Aiazbekov had never lived at that residence and that Aiazbekov had moved back to Asia or Russia in December 2017. The former friend did not know if Aiazbekov would ever return to the United States and had no contact information for Aiazbekov.
- Counsel attempted to contact Aiazbekov following the investigative report to substantiate the information provided by the private investigation, but Aiazbekov's phone was no longer in service.
- Counsel sent a text message to Aiazbekov before filing the motion in the hope that Aiazbekov's phone service had been restored but received no response.

In establishing a breach of the cooperation agreement, it is not enough for the insurer to "show mere disappearance of the assured without full proof of proper efforts by the insurer to locate him." *Founders*, 405 Ill. App. 3d at 374, 937 N.E.2d at 1193. The Court finds in this case that, National Continental, through counsel for Aiazbekov, showed the requisite reasonable degree of diligence through full proof of proper efforts to locate Aiazbekov. Similar to the insurance company in *Founders*, counsel for Aiazbekov employed every available means to contact Aiazbekov and exhausted every lead that was generated through the investigation into Aiazbekov's whereabouts.

In addition to establishing a breach of the cooperation agreement, the insurer must prove that it was "substantially prejudiced by the insured's actions or conduct in regard to its

7

investigation or presentation or defense of the case" in order to "be relieved of its contractual responsibilities." *Id*. at 375, 937 N.E.2d at 1193. Here, National Continental was substantially prejudiced in its defense by "the absence of the only known witness to the collision besides [the injured party]." *Id*. at 379, 937 N.E.2d at 1196. National Continental did not have facts or testimony from Aiazbekov to rebut Ljajcaj's claim that Aiazbekov drove negligently or to establish any comparative fault. Thus, National Continental is relieved of its contractual responsibilities to defend or indemnify Aiazbekov.

For the foregoing reasons, the Court will **grant** National Continental's Motion for Summary Judgment (ECF No. 19) and **deny** Ljajcaj's Motion for Summary Judgment (ECF No. 21). An order and judgment in accordance with this opinion will enter.


Dated: June 28, 2019                    /s/ Gordon J. Quist
                                        GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE